United States v. Hester is the next case for argument. Good morning Mr. Mills. Good morning Your Honor. Thank you. May I please the court Mr. Silver? Your Honors, I know that it's not generally your business to sit up here and review factual determinations of the district court, and I think this is a rare case, but something is not right here. I know that the district court in sentencing can consider hearsay, and that happens all the time, and I've been doing this for almost 30 years, and I'm used to it. But there's something not right about this case. We have a highly contested issue. Did Mr. Hester, my client, stab Jimmy Hudson, his cousin, or didn't he? And the government had the burden of proof to prove that that happened. We have an unusual circumstance where we had the incident on film. There were two videotapes. That's inconclusive. So then you have to rely on witnesses, and that's what the district judge did. Well, correct Your Honor, but the witnesses were the detective Gallina, who did nothing more than look at the video and give his interpretation of it, and Mr. Hester, who was there. He was stabbed. Mr. Hudson was stabbed. There was evidence about going into the bathroom, and there was evidence about their contact with one another. That was clear. And there's the kind of absurd notion that he was trying to make a phone call in the middle of a melee, which seems a little bit to be a stretch of the imagination. He pulled an object out of his pants. If it was a phone, he wasn't making a phone call, but who would he be calling in the middle of a fight that lasted all day? There was also evidence that the— Was he texting someone? No, he never looked at it. But the victim also testified in statements that the defendant stabbed him. The victim was not called by the government in this case. He gave three statements. One was the statement that he gave immediately after the event where he's at the hospital. He said he was stabbed, but he doesn't know who stabbed him. If he saw him, he could probably recognize him. Mind you, Mr. Hester was his cousin that he grew up with. He gives a statement three days later saying that EB, meaning Ernest Hester, was pushing me with his left hand, and all of a sudden he went away from me and my arms went numb. Then he gave a testimony of his deposition in the civil case saying that Ernest was protecting me, and all of a sudden he started wailing away with me with a knife. If you look at the video, you can see this. When they're back in the bathroom, he's holding him up against the wall with his left hand. He's not naming anybody else. No. Who knows what his— And, you know, he's his cousin, so maybe there are moments when he doesn't want to implicate him, but there it is. I mean, why isn't this a classic situation of the district court just weighing all the statements and all the evidence and coming to a conclusion? But how can you weigh a statement that's not subject to cross-examination? If Mr. Hudson was on that stand, I would have been going at him. There was also a fourth statement. That's true, but the rules certainly permit hearsay to come in, as you acknowledged at the outset of this argument. Absolutely. Hearsay can come in, but just because it's allowed in doesn't mean that you have to credit it. And when you have four inconsistent statements by the victim, who the government was perfectly capable of calling, I don't see how you can just— So what is clearly erroneous? I mean, isn't that the standard that the three of us have to apply to examining Judge Mordew's findings? Well, in relying the—it has to be clearly erroneous, which, after reviewing all the evidence, we are, quote, left with a definite and firm conviction that a mistake has been committed. I think a mistake has been committed here. And although the video is not conclusive, you can tell certain things from it. You can tell that—you see two points of contact. Mr. Hester is holding Jimmy Hudson up against the wall, and then he turns and he pushes him into the bathroom. So theoretically, he had a knife in his right hand that he might have knifed him in the shoulder. But Hudson said that he was stabbed three times back then. There's no way you can look at that video and say that Mr. Hester stabbed him three times. Then he comes out of the bathroom, and he disappears for half the—literally half the video into the side room. You can't see what's going on. But that's when he comes out. Now he's bleeding from the shoulder. When he comes out of the bathroom, based on my review of it, he's not bleeding at that point. He's bleeding from his chest when he comes out of the area where Mr. Hester was not. Mr. Hester was over to the left somewhere. Not only that, we had the enhanced photographs that Mr. Filter put together that I think, if you look at them, they're not conclusive, but they certainly are consistent with it being a cell phone. They're boxed in shape. You don't see anything that looks like a sharp blade. And then Judge Mordew in his decision, again, I think he reversed the burden. He said that it's—he's not clearly holding a cell phone. In other words, he could be holding a knife. It does look like he's—whatever he's holding, he's using it as some kind of a weapon. Does it make sense that one would use a flip phone as a weapon? Your Honor, I don't see the photos of showing him using that as a weapon. I see him holding it passively, not doing anything with it. That's what I see in the photos and in the videos. And, again, I mean, Judge Mordew didn't even—I mean, Mr. Hudson, in his deposition, testifies that he barely knew Mr. Hester. This was his cousin that he grew up with. He knew him very well. I don't think there was even a mention of that in Judge Mordew's decision. We—you know, again, there has to be a limit to the hearsay that you can use. I understand that the Probation Office goes out and puts some hearsay into the PSI report that there's really no controversy about. Certainly, the Court can consider that, and there's usually not any controversy about it. But here, when he goes right to the directly contested issue—and my plight has the fortitude to stand up there and expose himself to cross-examination. And, while it's not directly relevant, when we start the hearing, the prosecutor announces that if he loses, he's going to ask for points to be added for obstruction of justice and ask for his acceptance to be taken away. You know, Mr. Hester had to make a snap decision whether he was going to take that chance, which is going to— if that went—luckily, it didn't go against him on that. But if it had, he was looking at many, many more years added to his sentence. And he went ahead and testified anyways because he was adamant about the fact that he did not stab his cousin. And, again, I think the government really, in a situation like this where the matter is highly contested, they have an obligation to bring in the witness, who is—it's not like he's out of the country. He lives in Syracuse. The government could have brought him in and subjected him to cross-examination, just like Mr. Hester subjects himself to cross-examination. And, you know, Mr. Hester's mother testifies that Jimmy Hudson's mother called him after the fight and thanked him because Ernest was helping him out, and that she'd seen him at family events and there was no showing of any animosity. And Judge Mordew just dismissed that out of hand, said, I just don't find it to be credible. I think it's highly credible. And, again, we subjected our witnesses to the rigors of cross-examination, and the government did not. So I have to cross-examine pieces of paper, four of which have inconsistent stories. The fourth one is not highly inconsistent, but he said that in his second statement, he said that he was not stabbed before he got to the bathroom. In his deposition, he said that he doesn't know if he was stabbed before he got to the bathroom or not. Again, another thing that I could have cross-examined him on, but instead, again, I'm left cross-examining a piece of paper. Could you not have subpoenaed him? I could have, but I didn't have the burden of proof. You know, in fact, the government suggested that during the cross-examination of Mr. Hester's mother. Yes, I could have subpoenaed Jimmy Hudson, but I had no burden of proof. The government had the burden of proof. Mr. Silver? May it please the Court. What Judge Mordew said about the video I think is apparent to everybody who has seen it. It's a blurry, very difficult to discern whether the item in Mr. Hester's hand was a knife or some other object. And Judge Mordew did not rest his decision that it was a knife based on what was depicted, what the object was as it was depicted in the video. But all of the circumstances surrounding the event, according to Judge Mordew, who was the fact-finder here, support the notion that it was a knife. And given that there are two competing permissible views of the evidence, I don't think this Court can say that Judge Mordew was clearly erroneous. Judge Mordew found that the item was used in a stabbing motion in the video. He added that there was no use of the item as a phone, and that Mr. Hester's conduct in totality was inconsistent with his defense or his argument that he was there trying to protect his cousin, particularly in light of the fact that towards the end of the video, Mr. Hudson is bleeding onto the floor after clearly having been stabbed, and Mr. Hester simply turned around and walked out of the restaurant, taking no action to assist his cousin as he claimed he was doing. I would add to what Judge Mordew said a couple of things. And I'll do that. I think one of the things that's inconsistent with Mr. Hester's position at the hearing, that he held a phone, is that he admitted to the overt acts, the overt act in the indictment of having participated in the stabbing of four individuals at the restaurant. Now, I'll concede, and I'm sure it will be brought up, that saying that one participated in the melee is not the same as saying one actually stabbed. Right, and he was sentenced for stabbing. He wasn't sentenced for participating. Correct. But my point, Your Honor, is in 2013, at the time of the guilty plea, Mr. Hester said, I participated in that event. Not that I actually did the stabbing, but I participated in the event. His position at the hearing, the evidentiary hearing, is entirely inconsistent with that admission. Mr. Hester says, the only thing that I did there was protect my cousin. That's not participating in the stabbing of four individuals. That's mere presence. And the point that I'm trying to make, maybe inartfully, is that this is a belated claim, that he was holding a phone, and inconsistent with his admission to the court that he participated in the stabbing. The video and all the evidence that we're discussing here had been disclosed, at least the physical evidence had been disclosed in the course of pretrial discovery, I take it. I'm sure it was. The other thing that I would add, in terms of why Mr. Hester might have done this, and this is not something that Judge Mordew relied upon, is Mr. Hudson, by 2013, actually, had brought a lawsuit against Denny's, seeking money damages for the injury he resulted, that he suffered, and Denny's had implemented Mr. Hester as a defendant. So by the time of the sentencing, Mr. Hester had a motive to say that he did not stab Mr. Hudson, because he stood to be held financially accountable for that action by virtue of this other lawsuit. With respect to... In that particular lawsuit, I take it that there was a deposition by Hudson? Yes. Yeah, in which he said that Hester stabbed him. Yes. And concededly, Mr. Hudson gave inconsistent statements over time. Yeah. But Judge Mordew dealt with that, and, you know, juxtaposed with everything else he knew about the case, determined that, as I believe you indicated earlier, Mr. Hudson never identified anyone else as the person who stabbed him, and really there's no apparent motive, at least. When Hudson went into the bathroom, did Hester go in with him? That is not depicted on the video, but my understanding is no, but that's not clear. Okay. With respect to the disparity argument, I think the law is clear that Judge Mordew was under no obligation to consider. Why did the defendant get a substantially higher sentence than the other defendants, if the record indicates? The record does not indicate that, Your Honor. And I would say under these circumstances, it was the defendant's burden to show to the court that there was something that warranted a lesser sentence, not the government's burden. But in any event . . . I understand, but was there a, you know, were there priors here involving him, or there must be, I mean . . . Well, there . . . Presumably there was a reason for it. I'm sure there is. Was it the actual stabbing part, or was it prior convictions, or . . . Well, I mean, Mr. Hester actually got a pretty favorable sentence, given that he lost this evidentiary hearing. He didn't get obstruction of justice. Right. He did not lose acceptance of responsibility. But, you know, that aside, that was Judge Mordew's prerogative to make those determinations. He got a within-guideline sentence. There's nothing in the record to show whether these other defendants had circumstances that were similar. Did any of the other defendants get hit with the stabbing enhancement? I'm not certain of that, Your Honor, but I believe the answer to that question is yes, because the way the probation office set up the pseudo-accounts was there was no vicarious liability imposed on anybody. It was, you know, this person committed that, you know, each particular stabbing. Okay. But that would have been true of both the use of a dangerous instrument and the sixth-level enhancement for causing injury? I don't believe the other defendants received this enhancement because I don't believe they were held accountable for the stabbing of Mr. Hudson. Oh. So I don't know what the guideline calculations were with respect to those other defendants, Your Honor. There were four people stabbed? Yes. So my question really was whether any of the other defendants was held responsible for any of the other three stabbings. I believe the answer to that question is yes, Your Honor, but I actually am out on a limb here. I have not reviewed those pre-sentence investigation reports. Okay. I know certain defendants in the case cooperated. I can't tell you if those are co-defendants at issue here that Mr. Hester points to, but obviously there's a myriad of circumstances that we just don't know about, and I don't think that was the government's burden to refute. I think it was the defendant's burden to come forward and explain to Judge Mordew why the sentences should be closer. And finally, with respect to the three points that were added for the state conviction. You measure that by the original sentence, not by the actual time served, right? Yes, Your Honor. Unless the Court has any other questions. Thank you very much. Thank you, Mr. Silver. Mr. Millis. Very briefly, Your Honor. I would just point out of the four defendants we asked the Court to consider, three of them did plead guilty to the or they were charged in Overdack 31, which was the Denny stabbing. But I have to acknowledge, I mean, I put that in there in front of Judge Mordew because he had just gotten done sentencing everyone, and I just assumed he was going to know whether they were similar or not. And I don't think there's enough of a record really to tell you right now how similar they were, other than they were both charged with that act. So I'm not going to present very hard, particularly since he did get the acceptance point. I would say it's clear from the video, the one question, did Mr. Hester go in the bathroom? I think it's clear from the surveillance video he did not. He was holding Mr. Hudson up against the wall, then he shoved him in the bathroom, and then he turned and walked away. And then Mr. Hudson comes out of the bathroom seconds later. I think he's holding his left chest. But there's no evidence of blood at that point. So what was Judge Mordew then clearly erroneous in determining, as I understand, that he saw stabbing motions? I didn't see a stabbing motion there. The closest that it comes is when Mr. Hester is holding him like this, and then he suddenly shoves him like this, I think, with both hands into the bathroom. I think that's the closest you can say there's a stabbing motion. I didn't see any other stabbing motion. And I think the clearly erroneous comes from the point that if the evidence is evenly balanced, they haven't left their burden of proof. In fact, the government comes close to saying that in their brief at page 28, because there are two permissible views of the evidence presented below, the district court did not clearly err in determining that Hester stabbed Hudson with a knife. Well, that's the analysis we apply in determining — one of the analyses we apply in determining whether something is clearly erroneous, that if there's two permissible views of the evidence, the one that the judge chooses because they're both permissible is not clearly erroneous. I think the other point that Mr. Silver raised about, you know, Mr. Hudson's bleeding, and the judge said, well, Mr. Hester just turned and didn't help him, I think the equally plausible inference is Mr. Hester didn't stab, but he didn't know that he was stabbed. That's another equally plausible reason for his turning and walking away. And finally, he did plead guilty to the overt act. I wish that I had the foresight at that point to qualify the record saying, look, he participated in the event, but he did not stab because Mr. Hester was telling me from the beginning that he was holding a cell phone. That's in the record, actually, because Mr. Hester testified to that at the hearing. So thank you very much. Thank you, Mr. Millis. Thank you both. We'll reserve decision. The remaining two cases, United States v. Diaz and Anon v. New York State Department or New York City Police Department et al. are on submission. Please adjourn the court. Court stands adjourned.